UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-22036-CIV-SEITZ/SIMONTON

NYESA COSTA RICA,
NYESA GENERCIA, S.L., and
NYESA VALORES CORPORACION, S. A.,

      Plaintiffs,

vs.

WILSON CAPITAL GROUP HOLDINGS, LLC,
AYANNA JAMES,
WILSON CAPITAL GROUP LIMITED PARTNERSHIP, LTD.,
ROY A. LAUES-GHOLSTON, and
NORTHERN RIDGE CAPITAL PARTNERS, LLC.

      Defendants.
_____/

## ORDER GRANTING ENTRY OF DEFAULT JUDGMENT AS TO LIABILITY

THIS MATTER is before the Court on Plaintiffs' Application for Entry of Default Judgment Against Defendant, Northern Ridge Capital Partners, LLC ("Northern Ridge") [DE-10]. Northern Ridge approached Plaintiffs about a proposed loan for development of La Roca Resort. However, after much delay and numerous false representations, the transaction never closed and Northern Ridge failed to return Plaintiffs' funds, despite demands for it to do so. Because Northern Ridge failed to effectively answer the complaint,[1] and Plaintiffs sufficiently alleged facts supporting claims of fraud, conversion, civil theft, and unjust enrichment against Northern Ridge, the Court will enter Default Judgment against Northern Ridge.

---

[1] Defendant, Laues-Gholston answered the complaint on behalf of himself and Northern Ridge. Because Northern Ridge is a corporation and Laues-Gholston is not licensed to practice law in Florida, the answer only pertained to Laues-Gholston in his individual capacity.

I.       **Background**

This action arises out of Plaintiffs, Nyesa Vaolores Corporacion, S.A., Nyesa Generica S.L., and Nyesa Costa Rica's allegations of fraud and misappropriation of $1,645,099 USD.[2] Nyesa Valores Corporacion, S.A. is a land developer and management firm that is publically traded on the Spanish stock market. It is incorporated in Spain, where it has its principal place of business. Nyesa Generica S.L. is a Spanish company that functions as a subsidiary of Nyesa Varlores in North America. Nyesa Costa Rica is a Costa Rican company that is a subsidiary of Nyesa Generica that oversees its investments in Costa Rica.

Defendant, Northern Ridge is a limited liability company incorporated in and having its principal place of business in Ohio. Northern Ridge conducts business in Florida and held itself out as a loan underwriter and processor with over $900,000,000 USD available in investment funds. Defendant, Wilson Capital Group Holdings ("WCG") is a limited liability Florida company that was administratively dissolved by the Florida Department of State for failure to file an annual report. Its registered agent is Defendant, Ayanna James ("James"). Defendant, Roy A. Laues-Gholston ("Laues") was a managing member of Northern Ridge and a general partner of WCG-NRC, a limited partnership created specifically to hold WCG and Northern Ridge's interest in financing the project that caused this dispute.

Beginning in 2008, Plaintiffs commenced plans to develop La Roca Resort in Costa Rica. In September 2009, Laues approached Plaintiffs, while they were attempting to secure funding for the resort. During a financing meeting, Laues and James proposed a loan through WCG and Northern Ridge for $330,000,000 USD. At that time, they represented that Northern Ridge

---

[2]The factual background was taken entirely from Plaintiffs' allegations in the complaint.

would conduct the operation's due diligence and process the legal documents incident to the loan. They also told Plaintiffs that Northern Ridge had the requisite expertise and experience in international financing to undertake such tasks. Plaintiffs were to advance the costs of this work to Northern Ridge. Laues and James provided Plaintiffs with a JP Morgan Chase Bank financial statement to demonstrate Northern Ridge and WCG's purported proof of funds in March 2010.

On June 2, 2010, Northern Ridge, through Laues, provided Plaintiffs with an Escrow Agreement, which required them to advance $20,000 USD of a $100,000 USD Due Diligence Fee. After representations that funding would be successful and Defendants could fund the project, Plaintiffs wired $20,000 USD to a designated JP Morgan Chase Bank account. Then, on June 25, 28, and July 7, 2010, Northern Ridge, though Laues, presented Plaintiffs with a Confirmation of Loan Terms, ratifying the transaction. Specifically, this document reiterated that Nyesa owed $80,000 USD of the Due Diligence Fee and a Commitment Fee of $100,000 USD.

On July 8, 2010, Northern Ridge sent Plaintiffs an Addendum to the Confirmation of Loan Terms that represented the Due Diligence Fee would instead be held at Bank of America ("BOA") in an Escrow Management Real Estate Account. Thereafter, on July 12, 2010, WCG and James confirmed in writing that Northern Ridge completed the underwriting process and approved Plaintiffs for a loan. Further, James requested the balance of the fees and told Plaintiffs the loan would close on August 17, 2010. On July 30, 2010, Plaintiffs transferred $180,000 USD, the amount due on the Due Diligence and Commitment Fees, again relying on Defendants' representations. However, on September 5, 2010, Defendants notified Plaintiffs that the loan closing was delayed due to minor operational issues but told them that it would close by the end of September 2010.

3

Based on Defendants communicating the transaction would close, Plaintiffs publically disclosed the La Roca project. James and Laues met with Plaintiffs about the loan closing early in October 2010. During these meetings, James and Laues revealed WCG and Northern Ridge's intentions to restructure funding. Defendants would work together to secure funding and prepare the documents, so the transaction would close by the end of 2010. James and Laues provided Plaintiffs a Binding Letter of Intent and a purported Escrow Agreement, which required them to deposit an additional $1,000,000 Euros into the BOA account. Plaintiffs transferred the funds in two amounts of $500,000 Euros each, believing the loan would close.

Defendants were to disburse funds to Plaintiffs between November and December of 2010, in three separate transactions. However, none of the disbursements were ever made. Plaintiffs inquired about the delays, and Laues and James repeatedly assured them the transaction would successfully close. The delays continued through January and February 2011, during which time Defendants continued to make false assurances. After numerous delays and lack of the transaction closing, Plaintiffs made a written demand of an immediate closing or return of their funds on February 24, 2011. Defendants never responded to Plaintiffs' letter.

Despite Plaintiffs' written demand, Laues provided them a purported ABN AMRO Bank, N.V. letter of credit stating that it had approved a $500,000,000 USD credit facility to an entity associated with Defendants in April 2011. The ABN letter of credit called for Plaintiffs to deposit $7,500,000 Euros more. Upon inquiry, Plaintiffs contacted the ABN and uncovered the document was forged. Plaintiffs demanded the return of its $200,000 USD and $1,000,000 Euros to no avail. Subsequently, they brought this action for damages such as the loss of money,

diminution of stock value, diminution of value, and delays in the La Roca project resulting in economic damages.

## II. Discussion

A Court may enter default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and the failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). However, a defendant's default alone does not warrant entry of a default judgment. *Tyco Fire & Sec. LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). Further, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law...a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[3]

It is a well-established principle that "a corporation cannot represent itself and must be represented by counsel." *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385-86 (11th Cir. 1985). Here, Defendant Laues answered the complaint on behalf of himself and Northern Ridge. While Laues may represent himself as a pro se party, he may not represent Northern Ridge, because it is a limited liability corporation, and he is not authorized to practice law in Florida. As such, Northern Ridge did not effectively answer the complaint or contest any of Plaintiffs' factual allegations, and entry of default judgment is appropriate if the complaint establishes each cause of action for which it seeks judgment.

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding all cases decided before October 1, 1981.

5

### A. Fraud

A plaintiff must establish the following elements to prove an allegation of fraud: "(1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party." *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984).

With respect to this claim, Plaintiffs allege that Northern Ridge made numerous false statements on which they detrimentally relied. Defendants represented Northern Ridge had the ability to jointly fund a $330,000,000 USD loan, the expertise required to perform due diligence pursuant to the loan, the intent to underwrite the loan, and that Northern Ridge would hold the Due Diligence and Commitment Fees in an escrow account until the loan closed. Plaintiffs also allege Northern Ridge knew its representations were false and these false statements induced Plaintiffs to act. Specifically, Northern Ridge presented Plaintiffs with false proof of funds in support of its solvency, a confirmation of loan terms stating Plaintiffs' funds would be held in trust, and represented minor operational delays were the reason disbursements were not being made and the transaction would ultimately close.

Relying on Northern Ridge's continued representations and at Northern Ridge's requests, Plaintiffs transferred funds several times totaling $200,000 USD and $1,000,000 Euros, believing that Northern Ridge could fulfill its obligations based upon the parties' conversations and agreements. Northern Ridge knew Plaintiffs would uphold their end of the agreement because they did so from the outset of the parties' dealings and always transferred funds when asked to. As a result of the transfers, Plaintiffs suffered the detrimental loss of funds and delays in

construction of La Roca as a result of Northern Ridge's representations. Thus, Plaintiffs sufficiently alleged facts in support of its fraud claim. As a result, default judgment is appropriate with respect to this claim.

**B.  Conversion**

Under Florida law, conversion is an "act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." *Warshall v. Price*, 629 So. 2d 903, 904 (Fla. 4th DCA 1993). Thus, conversion occurs when a person with a right of possession of property demands its return and the demand is not met. *Pearson v. Ford Motor Co.*, 694 So. 2d 61, 69 (Fla. 1st DCA 1997).

Plaintiffs' allegations establish that Northern Ridge is also liable for conversion. Plaintiffs deposited funds into what it believed were escrow accounts for specific purposes. Plaintiffs did not authorize any other uses of the funds. Northern Ridge deprived Plaintiffs of their property when it failed to return their funds, despite Plaintiffs' requests to do so. Further, Northern Ridge did not, and does not, have an ownership interest in the funds. Northern Ridge had no right to keep the funds because it failed to perform the agreed upon tasks which would have entitled it to the funds – completing the loan underwriting process, performing the due diligence, and preparing the legal documents incident to the loan. Failure to return the funds constitutes conversion because Northern Ridge has asserted interests over Plaintiffs' property to which it is not entitled. Thus, Northern Ridge is liable for converting Plaintiffs' funds.

**C.  Civil Theft**

Under Florida law, a plaintiff must allege an injury resulting in violation of the criminal theft statute. Specifically, "(1) [a] person commits theft if he or she knowingly obtains or uses,

or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) [d]eprive the other person of a right to the property or a benefit from the property[;] (b) [a]ppropriate the property to his or her own use or to the use of any person not entitled to the use of the property." Fla. Stat. §§ 722.11, 812.014(1).

The complaint alleges each element necessary to prove civil theft occurred. Northern Ridge's representations and actions establish its intent to knowingly obtain or use the property of another with the intent to deprive them of property or a property benefit. Northern Ridge led Plaintiffs to believe it was capable of funding La Roca and performing tasks incident to the loan. As a result, Plaintiffs transferred a substantial amount of money for the Due Diligence and Commitment Fees. Subsequently, after Northern Ridge restructured the deal, Plaintiffs transferred an additional $1,000,000 Euros based upon Defendants' representations.

At all times, Northern Ridge knew that Plaintiffs would transfer the funds because they did so on numerous occasions after Defendant requested the funds. Further, the transaction never closed, and as such, Northern Ridge was not entitled to keep Plaintiffs' funds. Despite demands to return the funds, Northern Ridge has failed to respond, close the transaction, or return the money. Thus, Northern Ridge has appropriated the funds for its own uses and has simultaneously deprived Plaintiffs of their property and benefits that flow from that ownership interest. As a result, Northern Ridge is liable for civil theft.

### D. Unjust Enrichment

The essential elements of an unjust enrichment claim are: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to

8

retain it without paying the value thereof." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006).

Plaintiffs conferred a substantial benefit upon Defendant in the form of $1,645,099 USD. Plaintiffs deposited this money into an escrow account for work Northern Ridge was to undertake. Northern Ridge appreciated this benefit because it retained Plaintiffs' funds, without performing the tasks for which the money was transferred. Because Northern Ridge did not perform these task, it is not entitled to this monetary benefit. Plaintiffs alleged that they have received no benefit from the transferred funds. As a result, it is inequitable for Northern Ridge to continue retaining Plaintiffs' funds, and Northern Ridge has been unjustly enriched by retaining the funds.

Having reviewed the Motion and determining that Plaintiffs sufficiently alleged facts establishing fraud, conversion, civil theft, and unjust enrichment, and for the reasons set forth above, it is accordingly

ORDERED that

(1) Plaintiffs' Application for Entry of Default Judgment Against Defendant Northern Ridge Capital Partners, LLC [DE-10] is GRANTED IN PART as to liability.

(2) The Court will try the issue of the amount of damages at the same time this matter is tried against the remaining Defendants.

DONE and ORDERED in Miami, Florida, this 26th day of April, 2012.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record